E. J. MAGERSTADT *et al.*

*v.*

LOTTIE E. SCHAEFER.

*Opinion filed December 22, 1904—Rehearing denied Feb. 8, 1905.*

1. EXECUTIONS—*extent to which shares of stock are subject to levy.* The statute which makes shares of stock subject to levy under an execution issued on a judgment against the stockholder does not authorize the levy of the execution on shares of stock not owned by the judgment debtor, although standing in his name on the books of the corporation.

2. SAME—*when a wife may assert title to stock as against husband's creditors.* A wife may assert title to shares of stock actually owned by her although issued in the name of her husband and standing in his name on the company's books, even as against the husband's creditors, where there is nothing in her conduct or that of her husband, in dealing with the stock, that has misled the creditors to their injury.

3. SAME—*when creditors are not misled by the wife's conduct.* Judgment creditors cannot be said to have been misled to their prejudice by the conduct of the judgment debtor's wife, in permitting shares of stock which she purchased with her own money to be issued and allowed to remain in her husband's name, where the judgments were entered long prior to organization of the corporation, on indebtedness unconnected with the corporation or shares of stock.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

F. P. READ, (E. ALLEN FROST, of counsel,) for appellants.

ROGERS & MAHONEY, and CHILTON P. WILSON, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

In 1895 and 1896 four judgments, aggregating about $1900, were rendered in Cook county in favor of Owen F. Aldis and others against Andrew McAnsh and P. F. Schaefer. In October, 1901, these judgments were assigned to one of the appellants, William B. Hiller, and executions immediately issued thereon and were levied by the sheriff of Cook county on forty shares of stock in the North Shore Advertising Company and a like number of shares in the Joliet Bill Posting Company, corporations organized under the State of Illinois, all of which stock stood upon the books of said corporations in the name of P. F. Schaefer. On January 9, 1902, the appellee, his wife, filed two bills in chancery in the superior court of Cook county, one against the Joliet Bill Posting Company, Ernest J. Magerstadt, sheriff of Cook county, and William B. Hiller, and the other against the North Shore Advertising Company and said Magerstadt and Hiller. In each of these bills she alleged that she was the owner of said forty shares of stock of each of the corporations; that certificates therefor were issued to her husband, P. F. Schaefer, but that he never paid for or owned the stock, nor had any interest therein except as her agent and trustee; that when the same was issued, the latter part of 1900, when the company was organized, her husband immediately assigned and delivered the stock in the Joliet Bill Posting Company to her; that the stock in the North Shore Advertising Company, immediately after it was issued, was hypothecated to one Burr Robbins as collateral security for a $6000 note of her husband, being a part of the consideration paid for said stock, which note was paid by her on February 7,

1902, and said stock then delivered to her; that she neglected to have said stock transferred on the corporation's books and new certificates issued to her until November 21, 1901, when she demanded that this be done, but that they had each refused to comply with her request. She prayed for an order directing such transfer and registry, and that an injunction be issued restraining the defendants Magerstadt, as sheriff, and Hiller, as such judgment creditor, from in any way selling or interfering with the said shares of stock. A preliminary injunction was issued and the two cases consolidated. Upon final hearing, on answers denying the allegations of the bills and replications thereto, which hearing was before the chancellor in open court, a decree was rendered finding that the shares of stock in each company had always been and were then the individual property of the complainant, and the corporations were ordered to transfer the same to her within three days, and the lien created by the levy of said executions ordered removed and declared null and void, and the sheriff enjoined from enforcing his levy or selling the same. From that decree an appeal was taken to the Appellate Court for the First District, where it was affirmed, hence this appeal.

The evidence shows that P. F. Schaefer, Burr Robbins and R. C. Campbell, on December 21, 1900, organized the Joliet Bill Posting Company and the North Shore Advertising Company, corporations, for the purpose of carrying on the business of general advertising in Joliet and Waukegan. Each corporation had a capital stock of $6000, divided into one hundred and twenty shares of $50. The incorporators each subscribed and paid for forty shares, or one-third of the capital stock in said companies, and certificates for the shares in each company were issued to P. F. Schaefer and receipted for on the corporation books by him the latter part of January, 1901. Appellee and her husband testified, upon the hearing, that in the transaction the husband acted as her agent and trustee and paid for the stock with her money, and

they explained the source from which she derived the money, the original funds being received from her father's estate, $10,000 when she was married and $9000 at the time of the world's fair. Dividends were declared upon the stock from time to time and paid to the husband, the money being deposited to his credit in bank. He had been an officer and director in each of the corporations, and attended all stockholders' meetings and voted and represented said shares of stock as though they were his own. They both testify positively that in all his transactions concerning the issuing and managing of the stock he acted for her as her agent.

The principal ground of reversal insisted upon is, that the title to the shares of stock in a corporation, as to third parties, can only be shown by the stock books of the corporation, and that the mere delivery of certificates of stock without a transfer upon the stock books passes no title. In other words, the contention is that the books of a corporation showing who the stockholders are is conclusive evidence of the title or ownership of the shares of stock when attempted to be seized by an execution creditor of the one in whose name the stock is registered. In support of this contention reliance is placed upon sections 52 to 56 of chapter 77 of our statutes of 1874, relating to the levying and sale of stock of corporations, as construed by this court in the case of *People's Bank* v. *Gridley,* 91 Ill. 457. The language of section 52 of the statute at the time that case was decided provided that "the shares or interest of a stockholder in any corporation may be taken on execution and sold as hereinafter provided." By an amendment passed in 1883 there was added to that language the following: "But in all cases where such shares or interest has been sold or pledged in good faith for a valuable consideration and the certificate thereof has been delivered upon said sale or pledge, such share or interest shall not be liable to be taken on execution against the vendor or pledgor except for the excess of the value thereof over and above the sum for which the same

may have been pledged and the certificate thereof delivered." In construing this amendment we held in *Rice* v. *Gilbert,* 173 Ill. 348, that a pledge or sale of stock made by a stock-holder in good faith for a valuable consideration was valid, as against creditors of such stockholder, without the trans-fer being registered upon the company's books. It may be admitted, as contended by counsel for appellants, that in the present case the stock levied upon was not, strictly speaking, sold or pledged. The certificates were, however, delivered to the wife in consideration of her having paid for the same, and in that sense we think there was a sale, within the mean-ing of the amendment of 1883. That statute was evidently intended to protect the equitable rights of persons interested in the stock of corporations as it had been construed in the *Gridley case.* But in that case there was no question but that the pledgor was the legal owner of the stock, and the point decided was, that in view of the charter of the company, which expressly provided that the transfer of stock should only be made upon the books of the secretary on the pre-sentation of the stock certificates properly endorsed, an at-tempted transfer in any other manner was ineffectual to pass the title. It did not hold that the real owner of the stock could not in any case be shown, notwithstanding the regis-tration thereof upon the company's books in the name of another.

In our opinion, however, this case may be decided with-out reference to what was held in either of the foregoing decisions. At common law, shares of stock could not be taken upon execution, being in the nature of choses in action. Our statute makes such shares or interest of a stockholder in a corporation liable to levy and sale upon a judgment and exe-cution. It does not, however, authorize the levy of such execution upon stock which is not owned by the judgment debtor though standing in his name on the company's books. Here, according to the finding of the chancellor, which is sustained by the evidence, the defendant in the execution,

P. F. Schaefer, never was the actual owner of the shares of stock levied upon. They belonged to his wife and were paid for with her money. All that can be said is, that they were issued in the name of the husband, delivered to him and so registered upon the company's books, and that the wife permitted this to be done, allowing him to deal with the stock as his own, and therefore it is said she ought not, in equity, to be allowed to assert her ownership against the execution creditor. The statute having made the shares of stock liable to execution, they stand in the same position as any other goods and chattels liable to be seized and sold in satisfaction of a judgment. Notwithstanding the ownership of the wife as her separate property, she might permit her husband to so deal with it as to make it liable for his debts; but in the absence of anything tending to show that by her conduct and that of her husband in dealing with the property his creditors have been misled to their injury, there is no reason why she may not assert her title to the same extent as if the shares of stock had been any other class of personal property. We have frequently held that under our Married Woman's act a wife may own property and allow her husband to act as her agent in transacting business growing out of such property, such as procuring and transferring the same, without subjecting it to the payment of his debts. As was said in *Tomlinson* v. *Matthews,* 98 Ill. 178: "As to the property of the wife, protected as her separate property by the statutes in force in reference thereto, the husband occupies the same relation as does a stranger. She may sell it or loan it to him, or constitute him her agent for its management and disposition; but a gift of it by her to him will not be presumed in the absence of proof to that effect." See, also, *Dean* v. *Bailey,* 50 Ill. 481, *Bongard* v. *Core,* 82 id. 19, *Primmer* v. *Clabaugh,* 78 id. 94, and *Alsdurf* v. *Williams,* 196 id. 244.

Under the undisputed evidence in this case there can be no serious question but that, as between the complainant in

the bill below and her husband, she was entitled to the property and could have recovered the same in an action against him. It is true that by the manner in which she allowed her husband to deal with it she assumed the burden of showing that such conduct resulted in no fraud or injury upon her husband's creditors, and that she had no fraudulent purpose or design in permitting the stock to be issued to and stand in his name. From the record in this case no conceivable injury could have resulted to the plaintiff in the execution by reason of the complainant's conduct or the manner of dealing with the stock by her husband. The judgments upon which the executions were issued were rendered long before the organization of either of the corporations, and hence prior to the issuing of the stock to the husband, and therefore it could not be claimed that the judgment creditors were induced to give credit to him because of the fact that the stock stood upon the company's books in his name. Those judgments were also obtained on account of an indebtedness in no way connected with the corporations or shares of stock.

The question as to the ownership of the property, the manner in which it was dealt with and whether or not the complainant below was guilty of any fraudulent conduct or improper motive in allowing her husband to deal with it as his own so as to hinder or delay his creditors, were all questions of fact submitted to the chancellor, who saw the witnesses and heard them testify, and we think his finding and decree in favor of the complainant were fully authorized by the testimony.

We think all other questions raised upon this appeal have been properly disposed of by the Appellate Court. Its judgment will accordingly be affirmed.

*Judgment affirmed.*