**SHINSAKU NAGANO v. CLARK, Attorney General.**

**No. 45 C 700.**

United States District Court
N. D. Illinois, E. D.
June 7, 1949.

Otto Kerner, Jr., United States Attorney for the Northern District of Illinois, Chicago, Ill., for defendant.

CAMPBELL, District Judge.

The plaintiff, a Japanese alien resident in the United States since 1906, brought this action under Section 9(a) of the Trading with the Enemy Act, 50 U.SC.A.Appendix, § 9(a), to recover 8,780 shares of common stock of the Fuji Trading Company, Inc., which were seized by the Alien Property Custodian on February 2, 1943 by Vesting Order No. 813 issued pursuant to said Act and Executive Order No. 9095, 50 U.S. C.A.Appendix, § 6 note. In the vesting order the Custodian found that these shares of stock were the property of Kaku Nagano, the wife of the plaintiff herein, that she was a national of Japan, and that her last-known address was Tokyo, Japan. On March 10, 1943, the plaintiff filed a notice of claim with the Custodian as to 3,-105 shares of the vested stock on the ground that these shares were his property because of a gift of them which he made to his wife in 1932 was incomplete. After a hearing before the Vested Property Claims Committee of the Office of the Alien Property Custodian, the plaintiff's claim was denied on June 28, 1944. In the present action, therefore, the plaintiff seeks the return of 3,105 shares as his property, and the balance of the 8,780 shares, or, if he fails to establish his own title, all of said shares, as the property of his wife which were held by him as bailee.

In his answer, the defendant originally pleaded as a separate and complete defense that the complaint failed to state a claim upon which relief can be granted, because the plaintiff is a national of a foreign country whose property the Alien Property Custodian was authorized to vest under Section 5(b) of the Trading with the Enemy Act as amended, 50 U.S.C.A.Appendix, § 5(b), and under Executive Orders 9095 and 9193, 50 U.S.C.A.Appendix, § 6 note. After the United States Supreme Court decided in the case of Clark v. Uebersee Finanz-Korporation, 1947, 332 U.S. 480, 68 S.Ct. 174, 92 L.Ed. 88, that property seized under Section 5(b) may be the

C. Lysle Smith, Chicago, Ill., for plaintiff.

subject of a suit to recover brought under Section 9(a), the defendant abandoned this defense and rested his case on two grounds: (1) That plaintiff may not in a representative capacity recover the stock owned by Mrs. Nagano, an enemy national; (2) that as to the 3,105 shares of stock, plaintiff has failed to establish title in himself rather than in his wife.

The evidence and the arguments of counsel have dwelt in great detail upon the plaintiff's career and the history of Fuji Trading Company both as a partnership and later as a corporation. The matter in controversy, however, arises out of a 50% stock dividend voted by the stockholders of Fuji Trading Company, Inc. on January 3, 1932 which was to be distributed among the stockholders in proportion to their holdings. As a result of stock transfers and stock dividends prior to 1932, the distribution of stock ownership immediately prior to the dividend in question was as follows: the plaintiff owned 6,210 shares, his wife owned 3,780 shares, and her brother Yoshi Miya owned 10 shares. The corporation was for all practical purposes the alter ego of the plaintiff; and although he has contradicted the corporate records by asserting that the 3,780 shares in his wife's name prior to the 1932 stock dividend were gifts from him, he has not challenged her ownership of these shares.

On April 1, 1932, the plaintiff as president of the corporation caused it to issue a stock certificate in his wife's name for 5,000 shares, the total amount of the dividend. As a result of the issuance of this certificate, Mrs. Nagano's registered ownership became 8,780 shares, being the shares in controversy in this case, while the stock ownership of the plaintiff and his brother-in-law remained unchanged on the corporate books. The plaintiff has at all times had possession of this certificate and of the other certificates in his wife's name, for his wife has lived in Japan since 1923 or 1924 except for a visit to the United States in 1932-33. Plaintiff's explanation for his wife's long absence is that it was required by the family necessity of securing an oriental education for their son, who was to succeed his father in the family business,

and of arranging marriages in the Japanese tradition for their two daughters who had been born in Japan, unlike the son, and hence were not American citizens. During the long absence of his family from the United States, the plaintiff made annual trips to Japan.

The plaintiff relies upon this family history to support his argument that he did not intend to make a gift to his wife of the 3,105 shares, being his portion of the 1932 stock dividend, which were included in the 5,000 share certificate issued in his wife's name, and which he accordingly seeks to recover in this action. On the gift issue, both sides rely on the Uniform Stock Transfer Act which has been in effect in Illinois since 1917. The plaintiff contends that no gift was consummated in 1932 because there was a lack of both donative intent and delivery, and because he has at all times had dominion and control of the shares; and he relies upon Section 1 of the Uniform Stock Transfer Act which provides in part as follows, Smith-Hurd Ill.Ann.Stat., c. 32, § 416:

"Title to a certificate and to the shares represented thereby can be transferred only:

"(a) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby, or

"(b) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person."

The quoted portion of the statute relied on by the plaintiff designates the methods by which a person whose name appears on a stock certificate as owner may transfer title to the certificate and to the shares of stock represented thereby. But the case at bar is not concerned with whether the plaintiff has transferred title to a

stock certificate and the shares bearing his name. The question involved in this case is the legal effect of the issuance by the corporation, at the direction of the plaintiff, of a stock certificate in the name of his wife, which certificate represents in part shares originally owned by the plaintiff. In other words, we are not concerned here with the first step in the transfer of stock ownership, namely, the indorsement or assignment of the certificate by the person whose name appears on the certificate to be the owner of the shares. It is this step to which Section 1 of the Uniform Stock Transfer Act applies, and requires delivery as well as indorsement or assignment. This case, however, involves the last step in the transfer of stock ownership, namely, the execution by the corporation of a new stock certificate in the name of the transferee.

The defendant accordingly relies on Chicago Title & Trust Co. v. Ward, 1928, 332 Ill. 126, 163 N.E. 319, for the proposition that in the latter situation the transferor has made a completed gift which he cannot later disavow. In that case a stockholder caused a corporation to issue new certificates in the name of his daughter. He told her that he had put the stock in her name but did not deliver the certificates to her. After her death the certificates were reassigned to the father, apparently by his signing his daughter's name on the back of the certificates. The court held that, so long as the rights of third parties were not affected, legal title to the stock was complete as between the parties when registered on the books of the corporation, regardless of where or by whom the certificates were held, and that transfer on the books of the corporation is the best evidence of delivery of which the gift is susceptible. The court also said that the fact that the transferor was the largest stockholder does not change the principle and permit shares to be transferred differently or with different legal effect. This point is similar to the argument made here by plaintiff Nagano that the rule of the Ward case does not apply because the shares which he placed in his wife's name were the controlling shares of the corporation. Plaintiff has also attempted to distinguish the Ward case on the ground that the donee therein was informed of the gift, unlike Mrs. Nagano. It does not appear that the Illinois Supreme Court regarded knowledge of the gift by the donee as material, since one of the cases cited by the court involved a donee who had no knowledge that stock had been issued in her name. Furthermore, knowledge by the donee would not seem to be necessary, because acceptance by the donee is presumed when the gift is beneficial. Plaintiff also argues that the Ward case is different in that dividends were paid to the donee from the date of the transfer, and that in the donor's ledger of his personal securities he omitted the shares transferred to the donee. This is hardly a good ground for attempting to distinguish the case at bar, for when the Fuji Trading Company paid its only cash dividend in 1936, the plaintiff filed an income tax return on behalf of Mrs. Nagano showing dividend income to her of $1,756, reflecting the dividend of 20 cents per share on 8,780 shares. This action either was an acknowledgment by plaintiff of Mrs. Nagano's ownership of the shares which he now claims, or it would seem to be a prima facie case of income tax fraud.

In addition to his argument that there was no gift of stock to his wife in 1932 because of lack of delivery, the plaintiff also argues that one may place stock in the name of a transferee without conferring beneficial title in him and that the rights of the transferor will be recognized so long as third persons, such as creditors of the transferee, have not been misled by the latter's apparent ownership. Magerstadt v. Schaefer, 1905, 213 Ill. 351, 72 N.E. 1063; Fink v. Schleuter, 1917, 206 Ill.App. 159; D. I. Felsenthal Co. v. Northern Assurance Co., 1917, 205 Ill.App. 610, affirmed 1918, 284 Ill. 343, 120 N.E. 268, 1 A.L.R. 602. It might be argued that these cases have implicitly been overruled by certain language in the Ward case which appears to establish an irrebuttable presumption of gift where the owner of stock causes it to be transferred to another on the books of the corporation, with a new certificate issued in the name of the transferee. Thus the court stated in the

Ward case that the rule which it applied was necessary to protect a donee against the retraction of a completed gift, that transfer on the books of the corporation is the best evidence of delivery of which the gift is susceptible, and that donative intent is evidenced by the transferor's having the stock transferred on the books of the corporation. The issue in the Ward case, however, was simply whether retention of physical possession by the transferor of the new certificate issued in the name of the transferee constituted failure of delivery. In Nolan v. American Telephone & Telegraph Co., 1945, 326 Ill.App. 328, 61 N.E.2d 876, it was held that the Ward case was concerned only with the question of constructive delivery; that donative intent is as important an issue in the case of an alleged gift as delivery; and that where a transferor places stock in the name of a transferee on the books of a corporation and causes a new certificate to be issued in the name of the transferee, evidence may still be introduced to show that a gift was not intended and that the transferee was a mere nominal holder for the benefit of the transferor.

On the question of intention to make a gift, I am not persuaded by the plaintiff's testimony that he did not intend to give the shares in question to his wife. In an affidavit filed with the Treasury Department in 1942, he stated that it was his intention to make a gift of these shares to his wife for estate tax purposes but that the shares were not delivered to her. Since the Ward case holds that the method which the plaintiff followed constituted constructive delivery, the gift would seem to be complete even under the plaintiff's statement made in 1942. However, plaintiff now says that his affidavit of 1942 was not a complete statement of the circumstances surrounding the stock transfer of 1932, and that he has never prior to this trial had an opportunity to tell his full story, which involves his family plan for the future control of the corporation. He now states that his intention in causing the certificate to be issued in the name of his wife was to make a gift of the shares upon her permanent return to the United States with their son, at which time he could be assured that his control of the company would continue and that these shares would ultimately pass to their son under Mrs. Nagano's will which was then prepared but not executed. I fail to understand how the plaintiff's control of the company would be more assured after his wife's return than it was in fact during all the years of her absence. I likewise find implausible the plaintiff's statement that he intended the gift to take effect upon his wife's return because he could then assure himself that control of the company would go to their son under Mrs. Nagano's will. It would seem that he could have had such assurance simply by making a gift to his son instead of relying upon another, even his wife, to make a will executing his dispositive plan. In any event, under the plaintiff's version there seems to have been no point in placing the stock in Mrs. Nagano's name in 1932 when the time of her permanent return to the United States was still indefinite. It therefore seems reasonable to conclude that plaintiff intended to make a gift in 1932 for estate tax purposes and that this was the reason for placing the stock in the name of his wife, insead of merely indorsing to her a certificate in his name which he could continue to hold until her return to the United States, when the gift could be completed by surrendering the certificate to the corporation and causing a new certificate to be issued in her name. Even if these facts are not sufficient to persuade a reasonable man that a completed gift was made in 1932, the fact that plaintiff took income tax advantage in 1936 of the fact that a gift had apparently been made should estop him from now denying the legal effect of what he appeared to have done in 1932 and in effect asserted in 1936 that he had done.

 In connection with estoppel, it should be noted that this action under Section 9(a) of the Trading with the Enemy Act is designated as a suit in equity. Equity traditionally demands that a suitor show clean hands and good faith as a condition to relief. In addition to the fact that the plaintiff was willing to take income tax

advantage of the situation, there is a striking discrepancy between the position which he has taken in this case with respect to the 5,000 shares represented by Certificate No. 59 in the name of Kaku Nagano, and the position which he took in the affidavit filed with the Treasury Department in 1942 in an attempt to induce the Department to allow the issuance of a new certificate for 5,000 shares to the plaintiff in place of Certificate No. 59. In my opinion, this discrepancy is such as to belie plaintiff's statement in this case that his 1942 affidavit was an incomplete, but not inconsistent, statement of the facts surrounding the issuance of Certificate No. 59 in the name of Kaku Nagano. (Plaintiff denied at the trial that his transfer of shares to his wife in 1932 was motivated by a desire to avoid inheritance and estate taxes; however, in his post-trial reply brief says that the affidavit contained no misrepresentations "in spirit or in substance" but that it was incomplete in not also including a statement of plaintiff's motive arising out of his family plan.) The 1942 affidavit was made to induce the Treasury Department to allow the plaintiff to receive the entire 5,000 shares represented by certificate No. 59, and not merely the portion of such shares representing plaintiff's part of the 1932 stock dividend; and accordingly plaintiff stated in said affidavit that he had delivered 5,000 shares to the corporation's secretary for cancellation and received in return Certificate No. 59. The clear implication in this statement is that plaintiff delivered to the corporation's secretary 5,000 shares of stock from his holdings which, prior to the stock dividend of 1932, were 6,210 shares. He was therefore attempting to acquire a block of stock which, in the present action, he states belongs in part to his wife and his brother-in-law, the other stockholders. In this respect the language of the application to the Treasury Department and the plaintiff's supporting affidavit does not support the statement made in par. 7 of the complaint, wherein it is said that the application was for a license to cancel Certificate No. 59 and to reissue the shares proportionately among the share-

holders of record at the time of the stock dividend. The affidavit also stated that no dividends had ever been paid on said shares to Kaku Nagano, despite the income tax return filed in her name covering the 1936 cash dividend. In view of these facts, I am of the opinion that, apart from the gift issue, the plaintiff should be denied relief in equity to recover the shares which he seeks in this action and that he should be left in the position where his own actions have placed him.

The defendant has also argued that the plaintiff must overcome every theory of ownership by his wife which can be adduced from the facts, in order to sustain the burden of proving his right, title or interest in the property which he claims. Accordingly the defendant attempted to show that on the basis of transactions set forth in the corporate records, Mrs. Nagano's right by purchase to 8,670 shares can be traced, and that because of plaintiff's informal "borrowing" of 1,000 of her shares in 1926, his transfer to her of his portion of the 1932 stock dividend (bringing her record holding up to 8,780 shares) can be explained as his method of repaying her the stock (with its accretions) to which she was entitled. In answer to this argument, the plaintiff denies the accuracy of his corporation's records by asserting the professional incompetence of the attorney, now deceased, who prepared them. In view of what I have said on the gift and estoppel issues, I think it is unnecessary to rest the decision in this case on this argument of the defendant or on the accuracy or inaccuracy of the corporate minutes. It is sufficient to consider what the plaintiff has done and said since 1932, including what he said in his 1942 affidavit which was prepared by his present counsel, whose professional competence has not yet been attacked by the plaintiff, at least so far as this record shows.

■ Another point raised by the plaintiff is that the issuance of Certificate No. 59 to Kaku Nagano in 1932 was ultra vires the corporation and void ab initio because contrary to the terms of the stock dividend. This point might be raised by Y. S.

Miya, Mrs. Nagano's brother, whose stock dividend of five shares was included in the 5,000 shares placed in the name of Mrs. Nagano, although Mr. Miya was secretary and treasurer of the corporation and must have known what was being done; but surely the plaintiff is estopped to question the legality of the transaction in which he was the dominating party.

[5] The second of the plaintiff's claims since I hold that he has not established title to any of the vested shares in himself is that all of the vested shares should be returned to him as bailee from whose possession they were wrongfully taken. It is my opinion that the rule recognizing an interest in a bailee allowing him to recover against a wrongdoer has no application here. The defendant is not in the position of a trespasser, but has succeeded to the title of the owner of record under a claim of right by statute. If the vesting by the defendant was wrongful, it can be tested only in a suit brought by the former owner of record. Such a suit is now pending in this court.

It is therefore, ordered, adjudged and decreed that the complaint be dismissed at plaintiff's costs.